IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 13-30170-DRH |
| | ) | |
| MICKY GIBB, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR DISCOVERY ON THE ISSUES OF
RACIAL PROFILING AND SELECTIVE PROSECUTION**

COMES NOW Defendant Micky Gibb, ("**Gibb**") by and through his undersigned court-appointed attorney, Ronald E. Jenkins, and moves this Court to order the government to provide certain discovery set forth below. Gibb seeks this information to pursue a motion to dismiss and/or defense that the Chicago District Office of the Bureau of Alcohol, Firearms and Tobacco ("**ATF**"), which is in charge of the ATF in the Southern District of Illinois, is targeting people of color as defendants in a specific kind of crime that they create, i.e. phony stash house ripoff cases like this one, and the United States Attorney's Office for the Southern District of Illinois (**U.S. Attorney's Office**) then brings a prosecution based on this sting. Gibb's discovery requests, set forth below, are made pursuant to Fed.R.Crim.P. 16, Local Rules 7.1 and 26.1, the equal protection component of the Fifth Amendment's Due Process Clause and the inherent power of this Court to order broader discovery in appropriate cases. *See Wright and Miller*, 2 Federal Prac. and Pro. Crim., §254, n. 15, 22, 31-33. In support of his Motion for Discovery on the Issues of Racial Profiling and Selective Prosecution, Gibb states as follows:

1.      This case is based upon a "phony stash house ripoff," a type of sting often run by the ATF in other districts that is coming under increasing scrutiny. The elements of the sting are

1

simple and this case followed the normal pattern; using an informant, the government concocts a possible hypothetical crime: (a) there is a stash house, (b) the informant knows its location; (c) drugs (in significant enough quantities to trigger statutory minimum sentences) are kept there and guarded by just a few people with guns; (d) the informant has access to the stash house because he is a drug purchaser/courier; and (e) the informant can set someone up to commit an armed robbery of the stash house to obtain the drugs and then divide the drugs up with the would be robbers. Armed with this story line, the ATF placed the informant in the "projects" in East St. Louis to attempt to "randomly recruit" bad guys in a bad part of town to commit this phony crime. In this case, like all the others, there was not a stash house, there were no drugs and there never was going to be a robbery. *See* Katie Tinto, *Undercover Policing, Overstating Culpability*, NYU Law School Working Paper No. 12-04 at p. 49-55 (2012) (available at http://ssrn.com/abstract=2016362).

    2.    To determine if the ATF and U.S. Attorney's Office were targeting persons of color, principally African Americans but also Latinos, defense counsel has attempted to identify all phony stash house ripoff cases brought in the Southern District of Illinois.  However, the instant case appears to be the first such case brought in the Southern District of Illinois.  The ATF and the U.S. Attorney's Office in the Northern District of Illinois have brought many of these cases, but after receiving heavy criticism from the U.S. District Court for the Northern District of Illinois and being repeatedly ordered to produce the discovery sought by defense counsel in this matter, the ATF appears to have moved its phony stash house cases to East St. Louis in the Southern District of Illinois.  Importantly, however, the same ATF office, the Chicago District Office, oversees and approves all of the ATF's operations in the Northern District of Illinois, the Central District of Illinois and the Southern District of Illinois. *See*, *e.g.*, *U.S. v. Lewis*, 641 F.3d 773, 777 (7th Cir. 2011) (calling these cases "tawdry" affairs"); Order, *U.S. v. Brown,* No. 12-CR-632, Doc. 153

(NDIL July 31, 2013) (Judge Ruben Castillo criticizing phony stash house cases and ordering discovery sought herein); *U.S. v. Davis*, No. 14-1124 (7th Cir. September 8, 2014). *See also* Exhibit "A", list of "phony stash house cases" from the Northern District of Illinois; Exhibit "B", ATF Chicago Field Office website information.

3. The information that is currently available to the defense regarding racial profiling and selective prosecution in phony stash house cases comes, as explained in Paragraph 2, from the Northern District of Illinois and is reflected by the cases set forth in Exhibit "A". Those cases show that from 2006 at least 17 phone stash house cases have been charged, that 12 of the 17 targeted only African American defendants; 2 of the 17 targeted only Latino defendants; 2 of the 17 targeted white defendants; and 1 of the 17 targeted two Latino defendants and one white defendant. In total, there were 42 African American defendants, 8 Latino defendants, and 7 white defendants. Since 2011, at least 7 phony ATF stash house cases have been brought, and in total, there were 5 cases with 19 African American defendants, 2 cases with 7 Latino defendants, and 0 cases with 0 white defendants. This presents a stark discriminatory picture because in these kinds of cases, ATF and the U.S. Attorney's Office are not pursuing the prosecution of persons for actual crimes an ATF investigation has uncovered. Instead, informants and the ATF are selecting persons to present with the opportunity to commit what the targets are told will be a lucrative crime. *See U.S. v. Lewis*, 641 F.3d 773, 777 (7th Cir. 2011).

4. Given the information available to defense counsel, *see* paragraph 3 above, this appears to be a case of ATF and the U.S. Attorney's Office burying their collective heads in the sand. *McGill v. Duckworth,* 944 F.2d 344, 351 (7th Cir. 1991).

5. Defense counsel requested that the U.S. Attorney's Office provide information to corroborate the information uncovered to date, consistent with prior rulings from the Northern

District of Illinois on phony stash house cases. *See* Exhibit "C", defense counsel's correspondence to the U.S. Attorney's Office. In response, defense counsel was told by the U.S. Attorney's Office that this case in the first case of its kind in this district. It appears that no more information will be forthcoming unless this Court orders it to be produced.

6. As set forth above, it appears that the "opportunity" to participate in this phony stash house sting is provided overwhelmingly to minorities, and as such, the Court should compel the government to provide information about its practices. In doing so, the Court must not only consider Fed.R.Crim.P. 16, but also its inherent power to order discovery to serve the needs of the equal protection component of the Due Process Clause of the Fifth Amendment. *U.S. v. Armstrong*, 517 U.S. 456, 464-65 (1996) ("[A] prosecutor's discretion is subject to constitutional constraints. One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification. A defendant may demonstrate that the administration of a criminal law is directed to exclusively against a particular class of person … with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection law") (internal quotes and citations omitted).

7. The defense requests that the Court order the government to produce the following information, consistent with Fed.R.Civ.P. 16:

> a. A list by case name, number and race of each defendant for all phony stash house ripoff cases brought by the U.S. Attorney's Offices for the Northern, Central and Southern Districts of Illinois in which ATF was the federal investigatory agency from 2006 to the present and any documents that show the information stated in Exhibit "A" is incorrect;

b. For each case listed in response to a., a statement of prior criminal contact that the federal agency responsible for the investigation had with each defendant prior to initiating the phony stash house ripoff sing;

c. The statutory or regulatory authority for ATF to be instigating and/or pursuing phony stash house ripoff cases involving illegal drugs (i.e. heroin, cocaine, crack, ecstasy, methamphetamine, etc.) or any decision by any federal agency, the Justice Department or the White House to authorize ATF to pursue such cases in the Northern, Central and/or Southern District of Illinois;

d. All national and Chicago Field Office ATF manuals, circulars, field notes, correspondence or any other material which discuss "stings," "reverse stings," "phony stash house ripoffs" or entrapment operations, including protocols and/or directions to agents and to confidential informants regarding how to conduct such operations, how to determine which persons to pursue as potential targets or ultimate defendants, how to ensure that the targets do not seek to quit or leave before an arrest can be made and how to ensure that the agents are not targeting persons for such operations on the basis of their race, color, ancestry or national origin;

e. All document that contain information on how supervisors and managers of the Chicago area ATF were to ensure and/or did ensure or check to determine that its agents were not targeting persons on the basis of their race, color, ancestry or national origin for these phony stash house ripoffs and what actions the ATF supervisors and managers operating in the Northern, Central and Southern Districts of Illinois took to determine whether agents were not targeting persons for such

operations on the basis of their race, color, ancestry or national origin;

f. The number of confidential informants that the ATF in the Northern, Central and Southern Districts of Illinois have used each year from 2006 to the present and the number of those confidential informants who had access to non-African American or persons of non-African American decent who could be targeted for a phony stash house ripoff;

g. The factual basis in each case cited in Exhibit "A" and the cases produced in response to the above requests for decisions made to pursue or initiate an investigation against any of the individuals listed as defendants in these cases;

h. All documents containing instructions given by the U.S. Attorneys for the Northern, Central and/or Southern Districts of Illinois, from 2006 to the present, about the responsibilities of Assistant U.S. Attorneys to ensure that defendants in cases brought by the Offices of the U.S. Attorneys for the Northern, Central and Southern Districts of Illinois have not been targeted due to their race, color, ancestry or national origin and specifically that those persons who are defendants in phony stash house cases in which ATF was the investigatory agency have not been targeted due to their race, color, ancestry or national origin and that such prosecutions have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry or national origin;

i. All documents that contain information about any and all actions taken by the U.S. Attorneys for the Northern, Central and Southern Districts of Illinois, from 2006 to the present, about the responsibilities of Assistant U.S. Attorneys to ensure and/or check to determine that defendants in cases brought by their offices have not been

targeted due to their race, color, ancestry or national origin and specifically that those persons who are defendants in phony stash house cases in which ATF was the investigator agency have not been targeted due to their race color, ancestry or national origin and that such prosecutions have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry or national origin.

WHEREFORE, for the above reasons, undersigned counsel requests that this Court order the government to produce the information sought as set forth above.

Respectfully submitted,

/s/ Ronald E. Jenkins
_____

Ronald E. Jenkins    #23850MO
150 N. Meramec Avenue, Suite 400
St. Louis, Missouri 63105
(314) 721-2525
(314) 721-5525 (facsimile)
ATTORNEY FOR DEFENDANT MICKY GIBB

OF COUNSEL:
JENKINS & KLING, P.C.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Monica A. Stump, Assistant United States Attorney
William D. Stiehl, Jr., Esq.

/s/ Ronald E. Jenkins
_____